IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID COHEN AND MARIAN COHEN<br><br>　　　　Plaintiffs,<br>　v.<br><br>STATE FARM AND CASUALTY COMPANY, AND DOES 1 THROUGH 50<br><br>　　　　Defendants. | C1:09-CV-1051  AWI DLB<br><br>ORDER ON DEFENDANT'S 28 U.S.C. § 1404 MOTION, AND TRANSFERRING THIS CASE TO THE DISTRICT OF NEVADA |

This action arises out of a homeowners' insurance claim submitted by Plaintiffs David and Marian Cohen, ("Plaintiffs") to Defendant State Farm Casualty Company ("State Farm"). In the instant motion, Defendant seeks to transfer the action to the District of Nevada under 28 U.S.C. § 1404. For the reasons that follow, the Court will transfer this action to the District of Nevada.

**BACKGROUND**

On May 7, 2009, Plaintiffs filed a complaint in the Superior Court of California, County of Stanislaus. Plaintiffs' complaint alleges that State Farm breached a homeowners' insurance policy ("Policy"), breached the implied covenant of good faith and fair dealing, violated the Nevada Unfair Claims Practices Act, and violated Nevada and California elder abuse laws. Plaintiffs allege that State Farm improperly investigated and wrongly denied their claim and that

State Farm owes them benefits under the Policy for property damage and personal property losses caused by a September 12, 2008 theft at their Las Vegas, Nevada house ("Nevada Property"). Plaintiffs assert that the property damage and theft were caused by All American Liquidation ("AAL"), a company that Plaintiffs hired to conduct an estate sale at the Nevada Property. See David Cohen Dec. ("Cohen Dec.") ¶ 17.  In August 2008, Plaintiffs met with representatives from AAL in Las Vegas to discuss AAL's estate sale services.  On August 15, 2009, Plaintiffs and AAL signed a contract. Id. at ¶ 6.  On August 20, 2008, Plaintiffs sent a letter to AAL canceling the contract because Plaintiffs were concerned that AAL had the right to sell all of the personal property in Plaintiffs' home, whereas Plaintiffs only wanted to sell specified items. Id. at ¶¶ 7, 9.  Thereafter, AAL called the Plaintiffs and told them that AAL would be willing to limit the sale of personal property to only the items that were specifically designated by Plaintiffs. Id. at ¶ 10.  AAL representatives, Barbara and Edward Wintringhan, met Plaintiffs at their Nevada Property to go over the specific items that were to be sold. Id. at ¶¶ 10-11.  During the meeting, AAL and Plaintiffs entered into an oral agreement, in which AAL agreed to sell only specified items. Id. at ¶ 14.  After the sale, Plaintiffs discovered that AAL had sold items, that were not to be sold, and had removed various built-in appliances from the Nevada Property. Id. at ¶¶ 14, 17.

In September 2008, Plaintiffs presented their theft claim ("Claim") under the Policy to State Farm and alleged that AAL stole their property by trickery and/or false pretenses.

In October 2008, Plaintiffs moved to Modesto, California and became residents of California. See Cohen Dec. ¶¶ 3, 28.

On December 17, 2008, after conducting an investigation, State Farm sent a letter to Plaintiffs denying their Claim on the basis that no theft had occurred because Plaintiffs had entered into a legally binding contract with AAL.

On May 7, 2009, Plaintiffs filed this suit.  On June 15, 2009, State Farm removed the action to this court on the basis of diversity jurisdiction.  On June 17, 2009, State Farm filed a 28 U.S.C. § 1404(a) motion seeking to transfer this action to the District of Nevada, Las Vegas division.  On July 17, 2009, Plaintiffs filed an opposition to Defendant's motion.  On July 27,

2009, Defendant filed a reply.

## LEGAL STANDARD

28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). This statute partially displaces the common law doctrine of *forum non conveniens*. See Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986); Miskow v. Boeing Co., 664 F.2d 205, 207 (9th Cir. 1981). The purpose of § 1404(a) is "to prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Van Dusen v. Barrack, 376 U.S. 612, 616 (1964); Kawamoto v. C.B. Richard Ellis, Inc., 225 F.Supp.2d 1209, 1213 (D. Haw. 2002). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case by case consideration of convenience and fairness.'" Stewart Organization, Inc. v. RICOH Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen, 376 U.S. at 622).

In order to transfer a case under § 1404(a), the "defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." See Decker, 805 F.2d at 843. The district court must weigh numerous factors when deciding whether to transfer a case under § 1404(a):

> A motion to transfer venue under § 1404(a) requires the court to weigh multiple factors in its determination whether transfer is appropriate in a particular case. For example, the court may consider: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof. Additionally, the presence of a forum selection clause is a "significant factor" in the courts § 1404(a) analysis . . . [and] the relevant public policy of the forum state, if any, is at least as significant a factor in the § 1404(a) balancing.

Jones v. GNC Franchising, Inc., 211 F.3d 495, 498-99 (9th Cir. 2000). The Court may also consider the convenience of parties and witnesses, feasability of consolidation of other claims, local interest in the controversy, and the court congestion of the two forums. See Williams v.

Bowman, 157 F.Supp.2d 1103, 1106 (N.D. Cal. 2001).

## DISCUSSION

(1)   The location where the relevant agreements were negotiated and executed

The Policy was purchased in Nevada and signed by Plaintiffs and Defendant in Nevada. Plaintiffs and AAL negotiated and finalized the underlying contracts pertaining to the estate sale in Nevada. Plaintiffs submitted their Claim to State Farm's Nevada operations center. Since the Policy was purchased in Nevada and the AAL agreements were negotiated in Nevada, this factor weighs in favor of transferring the case to Nevada.

(2)   The state that is most familiar with the governing law

Plaintiffs' suit is based on Nevada and California law. Plaintiffs' second, third, and fourth causes of action allege that Defendant violated the Nevada Unfair Claims Practices Act, Nevada elder abuse laws, and breach of fiduciary duty under California law and/or Nevada law. Since this Court sits in California, the Eastern District of California is less familiar with the law governing Plaintiffs' second, third, and fourth causes of action because they are based on Nevada state law. Plaintiffs, however do not specify under what law they seek to bring their first cause of action for breach of contract. If it is based on California law, then this Court would be more familiar with the law governing that claim. Accordingly, because the majority of Plaintiffs' claims (as alleged in the complaint) are based on Nevada law, this factor weighs in favor of transfer to Nevada.

(3)   The plaintiff's choice of forum

The third factor weighs in favor of Plaintiffs as they chose the California forum. However, "where the forum lacks any significant contact with the activities alleged in the complaint, plaintiff's choice of forum is given considerably less weight, even if the plaintiff is a resident of the forum." Knapp v. Wachovia Corp., 2008 U.S. Dist. LEXIS 41000, *5 (N.D. Cal. May 12, 2008); Amazon.com v. Cendant Corp., 404 F. Supp. 2d 1256, 1261 (W.D. Wash. 2005); Hernandez v. Graebel Van Lines, 761 F.Supp. 983, 990 (E.D. N.Y. 1991). As discussed *infra*, the Eastern District of California has no contacts with the contractual activities related to the Policy, no contacts related to the underlying negotiations and agreements with AAL, and

insignificant contacts with the Defendant's claims-handling process and denial of the Claim. Moreover, even though Plaintiffs currently reside in California, Plaintiffs did not become residents until after the Policy was executed, after the AAL agreements were negotiated, after the alleged theft, and after the claims-handling process had been significantly under way. Therefore, since Nevada has a much greater connection to Plaintiffs' claims, this factor weighs against transfer but on a significantly diminished basis.

        (4)    <u>The respective parties' contacts with the forum</u>

Plaintiffs were residing in Nevada at the time the relevant contracts were negotiated, when the Claim was submitted, and during the majority of the claims-handling process. Plaintiffs purchased the Policy from a State Farm Agent in Nevada. Plaintiffs met with AAL employees in Nevada. The property at issue is located in Nevada and the alleged theft occurred in Nevada. Plaintiffs submitted their Claim to State Farm's Nevada Operations Center. Defendant asserts that the Claim was investigated and adjusted by State Farm's employees who are located in Nevada.[1] Defendant also asserts that the denial of the Claim occurred in Nevada. Because the majority of the parties' contacts are with Nevada and not California, this factor weighs in favor of transfer.

        (5)    <u>The contacts relating to the plaintiff's cause of action in the chosen forum</u>

The Policy was purchased and signed in Nevada. The AAL negotiations and agreements were carried out in Nevada. The alleged theft occurred in Nevada. The property losses for which Plaintiffs seek to recover from are located at the Nevada Property. The Claim was adjusted and investigated in Nevada. In essence, the breach of contract, bad faith, and other wrongs asserted in Plaintiffs' complaint were allegedly committed in Nevada, by persons located in Nevada. Accordingly, the Court does not see any meaningful contacts with the Eastern District of California relative to Plaintiffs' claims. This factor heavily favors transfer.

---

[1] Defendant asserts that the vast majority of the Claim was handled by Ms. Holloway under the supervision of Team Manager Andrew Woodard and that all substantive decisions as the claim were made by Ms. Holloway and Mr. Woodard. <u>See</u> Andrew Woodard Dec. ("Woodard Dec.") ¶ 7.

(6) <u>The differences in the costs of litigation in the two forums/Relative court congestion</u>

It is unknown what the differences in costs of litigation would be between the Eastern District of California or the District of Nevada. In terms of court congestion, however, the Eastern District has a congested docket. As of June 2008, the Eastern District had 6522 civil cases pending cases while the District of Nevada had 2825 civil cases pending.[2] See Federal Caseload Statistics 2008, Table C at p. 24;[3] see also <u>Western Oilfields Supply Co. v. Goodwin</u>, No. 1:07-CV-1863, 2009 WL 161068, *3-4 (E.D. Cal. Jan. 22, 2009); <u>G. Boswell Tomato Company-Kern, LLC v. Private Label Foods, Inc.</u>, 2008 U.S. Dist. LEXIS 66103, *45 (E.D. Cal. July 31, 2008). This factor weighs in favor of transfer.

(7) <u>The availability of compulsory process to compel attendance of unwilling non-party witnesses/Convenience of Witnesses</u>

To show inconvenience to witnesses, the moving party should state the witnesses' identities, locations, and content and relevance of their testimony. See <u>Florens Container v. Cho Yang Shipping</u>, 245 F.Supp.2d 1086, 1092-93 (N.D. Cal. 2002); <u>Williams</u>, 157 F.Supp.2d at 1108. Additionally, it is "the convenience of non-party witnesses, rather than that of employee witnesses, however, that is the more important factor and is accorded greater weight." See <u>Gundle v. Fireman's Fund Insurance Co.</u>, 844 F.Supp. 1163, 1166 (S.D. Tex. 1994). Defendant identifies at least seven material non-party witnesses who are expected to testify that reside in Nevada. Defendant specifies that these non-party witnesses, include: AAL and its employees, the neighbors who witnessed and possibly attended the sale, the witnesses who purchased the allegedly stolen items, the police officer who interviewed the Plaintiffs about the alleged theft, the attorneys retained by the Plaintiffs and by State Farm during the claims-handling process, and the loan modification agent who the Plaintiffs hired to assist them in the making of their Claim. See Woodward Dec. ¶ 11. Defendant asserts that it would be burdensome, expensive, and inconvenient for these seven Nevada witnesses to travel over 800 miles round-trip to attend trial

---

[2] The Eastern District of California has 10 District Judges, both senior and active. The District of Nevada also has 10 District Judges, both senior and active.

[3] This table may be found at the United States Courts website: http://www.uscourts.gov/stats/june08/C00Jun08.pdf.

in California. Id. at ¶ 14. Defendant also identifies at least five party-affiliated witnesses that are located in Nevada, including the State Farm agent from whom the Plaintiffs purchased the Policy and all but one of the State Farm employees who participated in the handling of the Claim.[4] In contrast, Plaintiffs do not identify any third-party witnesses, who are located in California or would find California to be a more convenient forum.

Moreover, it appears that this Court cannot exercise jurisdiction over the twelve witnesses identified by Defendant because they all reside in Nevada. The Nevada District Court, however, would have the ability to exercise jurisdiction over these same witnesses and compel their attendance. Because all of the material witnesses identified by Defendant are located in Nevada, and given this court's lack of jurisdiction over these witnesses, this factor weighs in favor of transfer.

(8)     The ease of access to sources of proof

The eighth factor appears to be a wash. Defendant indicates that Nevada will provide the parties with greater ease of access to sources of proof, such as AAL's documents and the documents of third-parties who attended the sale and purchased the stolen items. Plaintiffs argue that Defendant has not proven that such documents exist. Clearly this will be a document sensitive case, but it is unknown if voluminous amounts of paper are involved. Neither party goes into sufficient detail regarding the sources of proof and there is no explanation as to the quantity of proof. The Court will regard this factor as neutral.

Convenience of the Parties

Plaintiffs reside in California. Mr. Cohen declares that his elderly age (81 years old) and Mrs. Cohen's age (63 years old), their health problems, and financial limitations make it extremely difficult for them to travel to Las Vegas and prosecute their case since the District of Nevada, Las Vegas Division is approximately 1000 miles round-trip from their home in

---

[4] Defendant asserts that the only pertinent State Farm employee located in California is Doug Beauchamp, who took the Plaintiffs' recorded statement. Defendant declares that Mr. Beauchamp's participation in the case was limited to the taking of Plaintiffs' statement, using in large part questions given to him by Ms. Holloway. Defendant contends that Mr. Beauchamp's involvement in the Claim was due entirely to the fact that the Plaintiffs had moved to California. The location where the recorded statement occurred had no bearing on the Claim or the Policy. See Woodard Dec. ¶ 3.

7

California. See Cohen Decl. ¶¶ 2, 31-33. Mr. Cohen declares that he has colon cancer (for which he is not currently undergoing any treatment) and a heart condition (for which he takes medications). Plaintiffs declare that Mrs. Cohen has had lumbar surgery, which prevents her from sitting for long periods of time. Id. at ¶¶ 29, 31-32.

Plaintiffs rely on Tyrill v. Alcoa Steamship Co., 158 F. Supp. 853, 854-855 (S.D.N.Y. 1958), where the court found that a plaintiff's medical problem weighed against travel. However, while this Court agrees that in certain situations, a medical condition can weigh against travel, the facts of Tyrill are distinguishable from the facts of this case. In Tyrill, the plaintiff resided in New York and was a paraplegic, and the defendants sought to transfer the case to the District of the Virgin Islands. Additionally, the Tyrill plaintiff provided documentation from his doctor that stated that plaintiff's life would be endangered if he were to travel to the Virgin Islands. Id. at 854. Here, Plaintiffs do not assert or provide medical documentation that their lives will be endangered if they travel. Rather, Plaintiffs allege that traveling to Las Vegas for court proceedings would exacerbate their health problems. See Mr. Cohen Dec. at ¶¶ 31-31. Plaintiffs also rely on Brownell v. LaSalle Steel Co., 128 F. Supp. 548 (D. Del. 1995), where the court found a prospective witness's health condition to be one factor in the court's decision to transfer venue from Delaware to Illinois. Brownell is not dispositive in the present case because the Brownell court only viewed a health condition as one factor in the venue equation. Furthermore, the Brownell court noted that travel from Delaware to Illinois would be highly dangerous to the witness's physical well-being. Here, the Plaintiffs have not shown that travel to Las Vegas would be highly dangerous to their physical well-being.

Plaintiffs also allege that their financial conditions prevent them from prosecuting their action in Nevada because they cannot afford to fly and stay in Las Vegas to attend court proceedings. Although Plaintiffs declare that they live on a fixed income from the Social Security Administration, they do not provide any specific details concerning their monthly expenses or monthly income. Additionally, as noted by both Plaintiffs and Defendant, technological advances (i.e. electronic filing, video and tele-conferencing, express mail services,

faxes, etc.) have substantially reduced the burden of having to litigate in a distant forum.[5] Additionally, Plaintiffs are being represented by counsel, who can presumably attend court proceedings on their behalf, which will reduce Plaintiffs' need to travel. Accordingly, after reviewing Plaintiffs' declarations and opposition, it does not appear that Plaintiffs' ages, health issues, or financial conditions preclude them from prosecuting the matter in Nevada.

In contrast, State Farm asserts that litigation in Nevada would be more convenient because all five of its material party-witnesses work in Nevada, including those State Farm employees responsible for the claims-handling, denial of the Claim, and the agent from whom the Plaintiffs purchased the Policy and to whom the Plaintiffs reported their loss. Defendant points out that both Plaintiffs' and Defendant's counsel will need to travel to Nevada to pursue the necessary discovery (i.e. deposing the witnesses, examining documents, and conducting a site inspection of the Nevada Property). Moreover, Plaintiffs do not dispute that a substantial portion of the events giving rise to this lawsuit occurred in Nevada, nor do they dispute Defendant's contention that the Nevada court will be able to exercise jurisdiction.

On the balance, after weighing Plaintiffs' inconvenience in having to travel to Nevada and State Farm's inconvenience in having to transport five out-of-state party witnesses to California, the court finds that this factor weighs slightly in favor of the Plaintiffs and thus against transfer.

<u>Public Policy Considerations Of The Forums/Local Interest In The Controversy</u>

California has an interest in ensuring that its citizens have a litigation forum. However, Nevada also has an interest in ensuring proper performance of a contract entered into and executed within its state, and in investigating an alleged theft committed by one of its citizens. Additionally, Defendant asserts that they may have a subrogation interest against AAL if the fact finder ultimately finds that a theft occurred and that State Farm is liable. Defendant contends that if the action remains in California, State Farm cannot file a cross-complaint against AAL

---

[5] Defendant indicates that technological advances (i.e. electronic filing, video and tele-conferencing, etc.) will reduce Plaintiffs' burden of having to litigate in Nevada. <u>See</u> Defendant's Reply at page 7. The court reads Defendant's reply to mean that it will not oppose Plaintiffs' use of such electronic methods, to the extent Plaintiffs choose to utilize them. As such, the court relies upon the Defendant's representation in deciding this motion.

because it does not appear that this Court has jurisdiction over AAL.  However, if this matter is transferred to Nevada, Defendant could file a cross-complaint and avoid duplicative litigation and prevent the waste of party and judicial resources.  Williams, 157 F.Supp.2d at 1106.  On the balance and given the limited contacts with California, the Court believes that the interest of Nevada is greater than that of California.  This factors weighs in favor of transfer.

Analysis

From the submissions and filings, it is clear that the transactions between Plaintiffs and Defendant occurred primarily in Nevada.  In terms of the Jones factors, as discussed above, the Court views the eighth Jones factor as neutral.

Jones factor three and the convenience of the parties weighs against transfer.  However, the third Jones factor, consideration of the plaintiff's choice of forum, is given less weight than usual because of the lack of significant contact between California and the transaction(s) that forms the basis of this case.  Accordingly, two considerations weighs against transfer and one weighs against transfer in a diminished capacity.

Jones factors one, two, four, five, six, and seven, and the policy/local interest of the forums weigh in favor of a transfer.  Of particular weight is factor five since California's involvement relative to the basis of this lawsuit is *de minimis*.  The Court also finds that the interest of Nevada in this case is significant given State Farm's subrogation rights against AAL and this court's inability to assert jurisdiction over AAL and the potential duplicative litigation and waste of judicial resources that may result if State Farm is not able to file a cross-complaint against AAL in this action.

There are thus seven considerations that weigh in favor of transfer.  Since only two considerations weigh against transfer and one receives less weight than it otherwise would, the Court finds that the seven considerations in favor of transfer substantially outweigh the two considerations against transfer.  Accordingly, the Court will transfer this case to the District of Nevada.

## CONCLUSION

There are numerous factors associated with a 28 U.S.C. § 1404(a) convenience transfer.  Plaintiffs rely heavily on the inconvenience to themselves because of their age, limited income,

and health issues. These factors, however, are only one factor in this Court's determination of whether a transfer is warranted. Considering all of the factors, the Court finds that the factors in favor of transfer substantially outweigh the factors against transfer.

   Accordingly, IT IS HEREBY ORDERED that this case is transferred as per 28 U.S.C. § 1404(a) to the Federal District of Nevada.

IT IS SO ORDERED.

**Dated:   August 13, 2009**              /s/ Anthony W. Ishii
                                   CHIEF UNITED STATES DISTRICT JUDGE